Daniel R. Barnhart, WSB No. 20886
Bullard Smith Jernstedt Wilson
1000 SW Broadway, Suite 1900
Portland, OR 97205
(503) 248-1134

Of Attorneys for Defendant

FILED ___ LODGED
___ RECEIVED
OCT 2 4 2003
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA
BY ___ DEPUTY

03-CV-05578-PET

#509664

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| HEATHER ATTERBERRY, | USDC Case No. CV03-5578 RJB |
|---|---|
| Plaintiff, | |
| v. | Clark County Superior Court Case No. 03 2 05230 6 |
| NORTHWEST NATURAL GAS COMPANY, a public utilities corporation, | DEFENDANT'S NOTICE OF REMOVAL |
| Defendant. | |

Pursuant to 28 USC § 1446, Defendant Northwest Natural Gas Company ("Northwest Natural"), alleges that:

1. On or about October 8, 2003, Plaintiff Heather Atterberry ("Plaintiff") commenced the above titled civil action against Northwest Natural in the Clark County Superior Court. This lawsuit is now pending in that court as Case No. 03-2-05230-6.

2. On October 8, 2003, Plaintiff served the attached Complaint (Exhibit A) and Summons (Exhibit B) on Northwest Natural.

3. No further proceedings have taken place in this lawsuit in the Clark County Superior Court.

Page DEFENDANT'S NOTICE OF REMOVAL - 1
Case No.

BULLARD SMITH JERNSTEDT WILSON
A Professional Corporation
Attorneys at Law
1000 SW Broadway, Suite 1900
Portland, Oregon 97205
(503) 248-1134

1  4. At the time this lawsuit was commenced in state court:
2     a. Plaintiff was a citizen of Washington; and
3     b. Northwest Natural was incorporated in Oregon with its
4        principal place of business in Portland, Oregon.
5  5. The citizenship status of Plaintiff and Northwest Natural remains
6  unchanged at the time of this filing.
7  6. The amount in controversy in this action exceeds the sum or value of
8  $75,000, exclusive of interest and costs.
9  7. Plaintiff's complaint alleges, among other things, that Northwest
10 Natural subjected her to discrimination because of her pregnancy in violation of Title VII of
11 the Civil Rights Act of 1964, § 2000-e-2(a).
12 8. This Court has original jurisdiction over this action pursuant to
13 42 USC § 2000e-5(f)(3) and 28 USC § 1331 (federal question jurisdiction) and 28 USC
14 § 1331 (diversity jurisdiction). Consequently this action is removable under 28 USC §1441
15 et seq. This Court also has jurisdiction over Plaintiffs' state law claims pursuant to 28 USC §
16 1367 and/or 28 USC § 1441(c).
17 9. Northwest Natural's Notice of Removal is timely filed within 30 days
18 after Northwest Natural received a copy of the Complaint, in accordance with 28 USC
19 § 1446(b).
20 WHEREFORE, Northwest Natural respectfully requests that this lawsuit be
21 removed to this Court.
22 DATED: October 24, 2003.
23                                BULLARD SMITH JERNSTEDT WILSON
24                                By _____
25                                Daniel R. Barnhart, WSB No. 20886
                                  Attorneys for Defendant Northwest Natural
26                                Gas Company

Page DEFENDANT'S NOTICE OF REMOVAL - 2
Case No.

BULLARD SMITH JERNSTEDT WILSON
A Professional Corporation
Attorneys at Law
1000 SW Broadway, Suite 1900
Portland, Oregon 97205
(503) 248-1134

COPY
ORIGINAL FILED
OCT 0 8 2003
JoAnne McBride, Clerk, Clark Co.

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR CLARK COUNTY

| | | |
|---|---|---|
| HEATHER ATTERBERRY, | \| | Case No.: 03 2 05230 6 |
| | \| | |
| Plaintiff, | \| | |
| v. | \| | Complaint |
| NORTHWEST NATURAL GAS | \| | RECEIVED |
| COMPANY, a public utilities | \| | OCT 0 8 2003 |
| corporation, | \| | |
| Defendants. | \| | |

Plaintiff Heather Atterberry brings this statement of a claim against Northwest Natural Gas Company (NWN).

## JURISDICTION

1.1 Ms. Atterberry is a resident of Clark County, and has performed her duties as an employee for NWN in the State of Washington.

1.2 All the acts which led to Ms. Atterberry's termination occurred in Washington.

1.3 NWN is public utilities corporation registered to do business in Washington, and has a registered agent of Alicia Lowe, 111 Main St Suite 410, Vancouver, Washington 98660.

1.4 NWN maintains an office and work center in Vancouver, WA.

Exhibit A / Page 1

1  1.5  This court has jurisdiction over the parties and the subject matter.

## FACTS OF THE CLAIM

2.1  Ms. Atterberry began work for NWN in August 2000 as a meter reader.

2.2  Ms. Atterberry worked as a meter reader until her employment was terminated on or about April 10, 2002.

2.3  On April 10, 2002 an Employee Termination meeting was held which resulted in Ms. Atterberry's subsequent termination.

2.4  Troy Watts, Ms. Atterberry's Supervisor, was present at the Employee Termination meeting on April 10, 2002, and recorded the content of that meeting in a memo dated April 10, 2002. A copy of this memo was submitted by NWN to the Oregon Bureau of Labor and Industries in response to Ms. Atterberry complaint to that Bureau. A representative copy of Mr. Watts' memo is attached as Exhibit A.

2.5  Ms. Atterberry met with her supervisor, Troy Watts, in early December 2001 to notify him that she was pregnant with an expected due date of August 2000, and to discuss her intended use of Family Medical Leave after the birth of the child.

2.6  At the time Ms. Atterberry discussed her pregnancy with Mr. Watts, she was approximately three months pregnant.

2.7  Ms. Atterberry was approximately 7 months pregnant when she was terminated.

2.8  On December 10, 2002, Ms. Atterberry's complaint of unlawful employment discrimination and discharge due to her sex/pregnancy and her anticipated use of family leave was received by the Oregon Bureau of Labor and Industries.

2.9  On July 10, 2003, at Ms. Atterberry's request, the U.S. Equal Employment Opportunity Commission issued a Notice of Suit Rights to Ms. Atterberry. A representative copy of the Notice of Suit Rights letter is attached as Exhibit B.

## COUNT I

### (Discriminatory Discharge Because of Sex/Pregnancy)

3.1  Ms. Atterberry realleges and incorporates by this reference each and every allegation set forth in paragraphs 1.1 through 2.9 above.

3.2  NWN discriminately discharged Ms. Atterberry because of her pregnancy in violation of RCW 49.60.180(2), recovery available under RCW 49.60.030 includes

1  costs and attorney's fees; WAC 162-30-020 includes pregnancy and pregnancy related
2  conditions within the term "sex."

3      3.3    NWN discriminately discharged Ms. Atterberry because of her pregnancy
4  in violation of Title VII of the Civil Rights Act of 1964, Sec. 2000e-2(a), recovery
5  available under Sec. 2000e-5 includes costs and attorney's fees; Sec. 2000e(k)
6  includes pregnancy and related medical conditions within the term "sex."

7      3.4    Prior to Ms. Atterberry notifying her supervisor that she was pregnant, Ms.
8  Atterberry had a record of exemplary work performance and positive feedback from her
9  supervisor.

10      3.5    In approximately May 2002, Ms. Atterberry received an excellent work
11  review from her supervisor, and was thus given a merit increase in pay.

12      3.6    Ms. Atterberry was assigned one of the largest meter reading areas in
13  Vancouver, covering 21 different routes, which meant reading approximately 600-800
14  meters a day.

15      3.7    Only after notifying her supervisor in December 2001 of her pregnancy
16  (and intended use of parental leave after child birth) and after she began taking
17  pregnancy leave did Ms. Atterberry begin to receive negative feedback on her work
18  performance, and become the subject of continual investigation until her termination.

19      3.8    NWN terminated Ms. Atterberry's employment within four months of
20  notifying her supervisor of her pregnancy, very soon after taking time off work because
21  of prenatal illnesses, and several months before the birth of her child and thus her
22  anticipated use of the Family Medical Leave Act.

23      3.9    The reasons given for Ms. Atterberry's paid administrative leave and
24  subsequent termination were falsifying meter readings, poor work performance based
25  on unread meters (caused by her absences because of prenatal illnesses), her unread
26  meters causing NWN's computers to automatically generate estimated bills (as is
27  customary) which resulted in "erroneous billing," and disputed not read codes on two
28  meters.

29      3.10    Ms. Atterberry never knowingly or intentionally entered a false meter
30  reading.

1      3.11  NWN never provided any evidence of Ms. Atterberry knowingly or
2 intentionally entering a false meter reading, and only one assertion was made that she
3 read a meter wrong. The meter that she was alleged to have read wrong, thus causing
4 an erroneous bill, was actually the result of NWN's computer automatically generating a
5 bill.

6      3.12  Ms. Atterberry suffered severe anemia during part of her pregnancy, as
7 well as other prenatal ills.

8      3.13  During her pregnancy, there were times Ms. Atterberry had to be absent
9 from work in order to go to prenatal medical appointments. Ms. Atterberry always gave
10 sufficient notice to her supervisor regarding her upcoming appointments.

11      3.14  During her pregnancy, there were also times Ms. Atterberry was unable to
12 finish her route or even come to work because of prenatal illnesses, causing meters to
13 be unread.

14      3.15  Ms. Atterberry always notified her supervisor when she was unable to
15 come to work or complete her route.

16      3.16  Every day that Ms. Atterberry was absent, whether a full or partial day,
17 she was not able to finish her meter reading route for that day.

18      3.17  Even with doctor's notes as evidence, Mr. Watts continually questioned
19 Ms. Atterberry's absences for prenatal illnesses.

20      3.18  During Ms. Atterberry's April 10, 2002 Employee Termination meeting and
21 in Mr. Watt's subsequent memo regarding the meeting, Mr. Watt characterized Ms.
22 Atterberry's absences (which caused unread meters) as the result of her dislike for the
23 job rather than a result of her prenatal illnesses.

24      3.19  In February 2002, Ms. Atterberry met with her supervisor, Troy Watts, to
25 request a much larger work uniform to accommodate her significant change in body size
26 due to her pregnancy. No such uniform was ever given Ms. Atterberry.

27      3.20  Mr. Watts did a field check on two of Ms. Atterberry's meters for which she
28 had entered not read codes. It was highly unusual for Supervisor Troy Watts to do a
29 field check on the proper entering of not read codes (unless there was a high number of
30 unexplained not read codes).

3.21 Ms. Atterberry's absences (and thus inability to complete her routes while absent) were not unexplained because they were the result of prenatal illnesses, NWN was on notice that she was pregnant and suffered prenatal illnesses, and Ms. Atterberry always notified her supervisor as to when and why she was absent, providing medical documentation when possible.

3.22 NWN only cited two examples of erroneous not read codes in Ms. Atterberry's April 10, 2003 termination meeting. Both examples misrepresented the facts and falsely stated that Ms. Atterberry entered erroneous not read codes.

3.23 In the alternative, even if Ms. Atterberry had entered in two erroneous not read codes as alleged, this is a common occurrence among meter readers, and could be the result of mistakenly pressing the wrong button as to which of the preformatted codes best described why the meter could not be read.

3.24 The buttons a meter reader presses to enter in codes are small in size and close together on a small handheld device. Ms. Atterberry's pregnancy caused swelling in her fingers, which resulted in difficulty in pressing the small buttons on the handheld device without pressing the surrounding buttons.

3.25 Even if Ms. Atterberry had mistakenly entered in two erroneous not read codes, NWN does not terminate non-pregnant employees under those circumstances.

3.26 It is a common occurrence for non-pregnant meter readers not to be able to read every single meter, and it is NWN's customary business practice to have computers automatically generate an estimated bill for unread meters if it is near the end of the billing cycle.

3.27 Meter readers are not disciplined or terminated when NWN's computers automatically generate estimated bills.

3.28 Only after Ms. Atterberry notified NWN of her pregnancy and began to take pregnancy leave was she targeted for close scrutinization, and held her to an unprecedented and much higher standard than other meter readers.

3.29 Ms. Atterberry's pregnancy and related conditions were a substantial factor, if not the sole factor, in NWN terminating her employment.

3.30 As a result of NWN's actions, Ms. Atterberry has been damaged in an amount to be proven at trial.

## COUNT II
### (Deprivation and Withholding of Wages)

4.1   Ms. Atterberry realleges and incorporates by this reference each and every allegation set forth in paragraphs 1.1 through 3.30 above.

4.2   NWN willfully and intentionally deprived and continues to deprive Ms. Atterberry of her wages for approximately the last two weeks of her work, and other time and benefits, the exact amount to be determined at trial, in violation of RCW 49.52.050(2); recovery available under RCW 49.52.070 includes double damages, attorney's fees, and costs.

4.3   In the alternative, at the end of Ms. Atterberry's final pay period after being discharged, NWN withheld and continues to withhold her wages for approximately the last two weeks of her work, and other time and benefits, the exact amount to be determined at trial, in violation of RCW 49.48.010; recovery available under RCW 49.48.030 includes attorney's fees and costs.

4.4   Subsequent to her final pay period, Ms. Atterberry called the person in charge of payroll in Human Resources several times requesting her wages, and each time she was told she would not be paid.

4.5   Each time Ms. Atterberry requested her wages, she was told they were being withheld to pay back NWN for leave she had taken as a result of her pregnancy, and that in fact she owed NWN money for time she had taken off work for her prenatal illnesses. No accounting was ever provided as to how this conclusion was arrived at.

4.6   At no time did Ms. Atterberry did not knowingly submit or consent to any wages being withheld.

## COUNT III
### (Intentional Infliction of Emotional Distress)

5.1   Ms. Atterberry realleges and incorporates by this reference each and every allegation set forth in paragraphs 1.1 through 4.6 above.

5.2   Ms. Atterberry was the single mother of a seven year old child, and was approximately seven months pregnant with her second child when NWN terminated her employment.

5.3 Because NWN terminated Ms. Atterberry, refused to pay her final wages, and contested her unemployment compensation benefits, as a single mother Ms. Atterberry was without any source of income and no way to pay for rent or other necessities of life for her or her seven year old son. Thus Ms. Atterberry could not afford to continue her medical benefits, and faced being 7 months pregnant with a second child without any source of income or medical benefits.

5.4 The trauma of Ms. Atterberry's termination caused her to suffer depression, anxiety attacks, loss of appetite, dizziness spells, paranoia, and extreme sensitivity to worrying and becoming upset.

5.5 NWN's actions in using pretextual reasons to terminate Ms. Atterberry's employment because of her pregnancy in the face of her being a single mother pregnant with a second child, leaving her without any income and thus no way to pay for medical benefits, and subsequently fighting her unemployment compensation claims, was extreme and outrageous conduct, beyond all decency, and utterly intolerable in a civilized society.

5.6 As a result of NWN's actions, Ms. Atterberry has been damaged in an amount to be proven at trial.

**PRAYER**

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

6.1 For general, special, and punitive damages in an amount to be determined at the time of trial;

6.2 For attorney's fees, costs, and disbursements herein to be taxed; and

6.3 For such other and further relief as the court deems just and equitable.

Dated this 8th day of October, 2003.

David Schoenborn, WSBA #33346
Law Office of David Schoenborn
310 East 12th Street, #A
Vancouver, WA 98660
Tel 360-693-9998  Fax 360-694-3533
Attorney for Plaintiff

Date: April 10, 2002

To: Personnel File – Heather Atterberry

From: Troy E. Watts

Subj.: Employee Termination

On Wednesday, April 10, 2002, at 0730, a meeting was conducted at our Central Service Center with Vancouver Meter Reading Employee, Heather Atterberry.

In addition to Ms. Atterberry, others present at this meeting included Chief Union Steward, Diana Salathe, Meter Reading Manager, David W. Aimone and myself, Meter Reading Supervisor, Troy Watts.

The purpose of this meeting was to discuss Ms. Atterberry's work performance on meter reading routes 56-0672 and 56-0772.

Ms. Atterberry's work performance on both of these workdays reflected a large number of peculiar meter readings that she had recorded for our customers. In addition, she had not read, or skipped over a number of customer meters without giving an explanation of her actions. This resulted in the estimation of the customer's accounts.

There were two customer accounts that she failed to read, while she entered not read reason codes of "meter blocked" and "gate locked". I personally field checked both of these accounts, and had no problem in obtaining the meter readings for these customer's accounts

This information was presented to Ms. Atterberry. She was asked for an explanation of her unsatisfactory work performance.

She responded by stating that she had entered false meter readings on the customer accounts in question without actually reading their meters. She confessed to skipping over, or just not reading meters. She had no explanation for the two customer accounts that she recorded not reasons of "meter blocked" and "gate locked."



Exhibit A-1

Exhibit A / Page 8

EEOC Form 161-(3/98)

U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

To: **Heather Atterberry**
3317 Ne 143 Ave
Vancouver, WA 98682

From:
EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
SEATTLE DISTRICT OFFICE
FEDERAL OFFICE BLDG.
909 1st AVE., SUITE 400
SEATTLE, WA  98104-1061

[ ] On behalf of person(s) aggrieved whose identity is
CONFIDENTIAL (29 CFR § 1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| D-2003-00191 | STEVE HUNT, 706 Cord. | (206) 220-6855 |

THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans with Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge.

[ ] Having been given 30 days in which to respond, you failed to provide information, failed to appear or be available for interviews/conferences, or otherwise failed to cooperate to the extent that it was not possible to resolve your charge.

[ ] While reasonable efforts were made to locate you, we were not able to do so.

[ ] You were given 30 days to accept a reasonable settlement offer that affords full relief for the harm you alleged.

[ ] The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[X] Other (briefly state)   **CHARGING PARTY REQUEST**

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, and/or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this Notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.

On behalf of the Commission

_____     10 JULY 2003
JEANETTE M. LEINO, Director              (Date Mailed)

Enclosure(s)

cc: NORTHWEST NATURAL GAS Co.             DAVID SCHOENBORN
220 NW Second Ave.
Portland OR. 97209

Exhibit B-1

Exhibit A / Page 9

Her only explanation of her unsatisfactory work performance was that she was "tired" of her job. She liked our company, but her job had just become too demanding, and she could no longer keep us with the workload.

Ms. Atterberry was informed that her explanation of her unsatisfactory work performance was not acceptable. She had falsified meter readings, not read codes, and just passed by customer's meters, without attempting to get a meter reading. Each of these factors resulted in the erroneous billing of our customer's accounts.

In conclusion of our meeting, I informed Ms. Atterberry that I was placing her on paid administrative leave for the day, pending further investigation of her actions. I told her that I would call her at her home with a decision on how we were going to deal with the severity of her unsatisfactory work performance.

Upon further review of this matter with Chief Steward, Diana Salathe, and Meter Reading Manager David W. Aimone, it was agreed that Ms. Atterberry's unsatisfactory work performance in falsifying customer's records warranted her termination from our company.

I called Ms Atterberry on two occasions the evening of Wednesday, April 10th. No one answered her phone, so I left a message each time informing Ms. Atterberry of our decision to terminate her employment.


Troy Watts
Meter Reading Supervisor


Cc:   Diana Salathe, Chief Steward
      Rich Oare, Local 11

Exhibit A-2

Exhibit A / Page 10

**COPY**
ORIGINAL FILED
OCT 0 8 2003
JoAnne McBride, Clerk, Clark Co.

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR CLARK COUNTY

| HEATHER ATTERBERRY, | Case No.: 03 2 05230 6 |
|---|---|
| Plaintiff, | |
| v. | Summons |
| NORTHWEST NATURAL GAS COMPANY, a public utilities corporation, | |
| Defendants. | |

RECEIVED
OCT 0 8 2003

TO THE DEFENDANT:

A lawsuit has been started against you in the above entitled court by the above named Plaintiff. Plaintiff's claim is stated in the written Complaint, a copy of which is served upon you with this Summons.

In order to defend against this lawsuit, you must respond to the Complaint by stating your defense in writing, and by serving a copy upon the undersigned attorney for the Plaintiff this summons within twenty (20) days after the service of the Summons, excluding the day of service, or a default judgment may be entered against you without notice. A default judgment is one where Plaintiff is entitled to what he asks for because

Summons 1

Exhibit B / Page 1

you have not responded. If you serve a notice of appearance on the undersigned attorney, you are entitled to notice before a default judgment may be entered.

You may demand that the Plaintiff file this lawsuit with the court. If you do so, the demand must be in writing and must be served upon the person signing this summons. Within 14 days after you serve the demand, the Plaintiff must file this lawsuit with the court, or the service on you of this summons and complaint will be void.

If you wish to seek the advice of an attorney in this matter, you should do so promptly so that your written response, if any, may be served on time.

This summons is issued pursuant to Rule 4 of the Superior Court Civil Rules of the State of Washington.

Dated this 9th day of October, 2003.

David Schoenborn, WSBA #33346
Law Office of David Schoenborn
310 East 12th Street, #A
Vancouver, WA 98660
Tel 360-693-9998  Fax 360-694-3533
Attorney for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that I served the foregoing DEFENDANT'S NOTICE OF REMOVAL on:

David Schoenborn, WSBA#33346
Law Office of David Schoenborn
310 East 12th Street, #A
Vancouver, WA 98660
Fax: (360) 694-3533

Attorney for Plaintiff

☑ by **mailing** a true and correct copy to the last known address of each person listed. It was contained in a sealed envelope, with postage paid, addressed as stated above, and deposited with the U.S. Postal Service in Portland, Oregon.

☐ by causing a true and correct copy to be **hand-delivered** to the last known address of each person listed. It was contained in a sealed envelope and addressed as stated above.

☐ by causing a true and correct copy to be delivered **via overnight courier** to the last known address of each person listed. It was contained in a sealed envelope, with courier fees paid, and addressed as stated above.

☐ by **faxing** a true and correct copy to the last known facsimile number of each person listed, with confirmation of delivery. It was addressed as stated above.

☐ by **emailing** a true and correct copy to the last known email address of each person listed, with confirmation of delivery.

DATED: October 24, 2003.

_____
Daniel R. Barnhart, WSB No. 20886
Attorneys for Defendant Northwest Natural
Gas Company

Page DEFENDANT'S NOTICE OF REMOVAL - 3
Case No.

BULLARD SMITH JERNSTEDT WILSON
A Professional Corporation
Attorneys at Law
1000 SW Broadway, Suite 1900
Portland, Oregon 97205
(503) 248 -1134